UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Bockelman et al | ) | |
|         Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 10-1001 |
| | ) | |
| BNSF Railway Company | ) | |
|         Defendant | ) | |

## ORDER

Now before the Court are two joint motions for ruling on objections contained in four deposition transcripts that will be read at trial in this matter. Those rulings follow.

### RULES 703 AND 705

During his direct examinations of Dr. Wang and Dr. Baz (two of Bockelman's treating physicians), Plaintiff's counsel repeatedly had the doctors read *verbatim* into the record sections of various medical records and reports that had been authored not by them but by other physicians or providers. Defendant objected, each time, that the testimony was hearsay. Plaintiff responds that these records were business records, an exception to the hearsay rule.

Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Rule 705 provides:

1

> The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Rule 803(6) provides in pertinent part:

> The following are not excluded by the hearsay rule, even thought the declarant is available as a witness:
>     *     *     *     *     *
> (6) **Records of Regularly Conducted Activity.**--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness.

The first issue to be addressed is whether these medical records are the type of business records excepted from the general rule that hearsay is not admissible. If they are, then this problem disappears because the general rule no longer would apply.

While plaintiff's counsel himself asserts that these records were made at the time of treatment by the doctor who treated Bockelman, and that it was the regular practice of the doctor to keep such records, no evidentiary support for this argument is presented. In order to conclude that records fall within this category, there must be testimony establishing the elements. See, U.S. v. Oros, 678 F.3d 703, 708 (7th Cir. 2009). Moreover, that testimony must be from someone with personal knowledge about the record-keeping of the provider who created the record. Fed.R.Evid. 602. Plaintiff has failed to direct the Court to any such evidence and has therefore failed to meet his burden of showing that the records fall within this exception to the hearsay rule. The content of these records is, in other words, inadmissible hearsay.

Of course, Fed.R.Evid. 703 allows an expert to rely on inadmissible information. That does

not mean, however, that the inadmissible information becomes admissible. The Committee Notes on the 2000 amendment to Rule 703 state that the Rule includes "a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose when that information is offered by the proponent of the expert." Accordingly, in the general sense, it was improper for Plaintiff to have conducted the direct examination of these doctors in this manner.

Rule 703 provides that the presumption against admissibility may be overcome by a showing that the probative value of the records outweighs the prejudicial effect. Plaintiff has made an effort to establish that he has satisfied this balancing test. His effort is unavailing. As an example, Plaintiff had Dr. Wang read into evidence records relating to an MRI. Dr. Wang then based his opinion that Bockelman had suffered a stroke on the MRI records. According to Plaintiff, "Without such evidence, jurors are left to take the doctor's opinions on the doctor's work, without being made aware of any supporting basis for such opinions." That is simply not true. It is not necessary that the MRI record itself go to the jury for Dr. Wang to base his opinion on the MRI record. The jury will have no reason to doubt Dr. Wang's opinion unless Defendant challenges it on cross examination, at which time the door may well be opened for admission of the MRI record.

The Rule allows reliance on inadmissible records and only if some special need for the record itself is brought to the Court's attention does the presumption against admissibility evaporate. Plaintiff may not do an end-run around the limitations on opinion testimony by bringing other physician's medical records into evidence on direct examination. I have reviewed each of the objections that fall within this category, taking into account probative value and prejudicial effect, and I **SUSTAIN** the objections the testimony below:

| | | |
|---|---|---|
| Dr Wang's testimony | Objection 1 | 19:13 - 24:1 |
| | Objection 2 | 25:10 - 26:17 |
| | Objection 3 | 27:5 - 28:4 |
| | Objection 4 | 28:16 - 29:11 |
| | Objection 5 | 30:15 - 32:8 |
| | Objection 6 | 32:11-17 |
| | Objection 7 | 32:20 - 33:5 |
| | Objection 8 | 36:2-20 |
| | Objection 10 | 37:23- 38:21 |
| | Objection 11 | 38:24 - 39:14 |
| | Objection 11 | 38:24 - 39:14 |
| | Objection 12 | 40:13 - 41:6 |
| | Objection 13 | 41:17 - 42:5 |
| | Objection 14 | 42:14 - 43:11 |
| | Objection 15 | 43:22 - 44:18 |
| | Objection 16 | 44:21 - 45:17 |
| Dr. Baz's testimony | Objection 3 | 32:7-18 |
| | Objection 4 | 39:10-17 |
| | Objection 5 | 40:7-12 |
| | Objection 6 | 42:8-14 |
| | Objection 7 | 44:1-11 |

## OTHER OBJECTIONS TO DR. WANG'S TESTIMONY

***OBJECTION 5*** *[30:15 - 32:8]* and ***OBJECTION 6*** *[32:11-17]* - Defendant objected to two areas of Dr. Wang's testimony on the grounds that the response assumed a fact not in evidence, namely that Bockelman had in fact suffered a stroke. This issue is very much disputed, and the question of whether he had a stroke is one for the jury. Defendant had every opportunity on cross examination to challenge Dr. Wang's assumption that Bockelman had suffered a stroke. The jury will have no problem sorting out this question. The objection raised as to Dr. Wang's testimony at 30:15 - 32:8 and 32:11-17 is DENIED.

***OBJECTION 9*** *[37:1-8]* Defendant also objected to Plaintiff's efforts to have Dr. Wang establish that a record created by another physician (Dr. Lasher) was a business record. Dr. Wang and Dr. Lasher are not in the same medical practice. Although Dr. Wang testified that he knew Dr.

4

Lasher "to some degree," that is not the same as having the requisite knowledge to testify about how Dr. Lasher creates his medical records. The objection to Dr. Wang's testimony at 37:1-8 is SUSTAINED.

*OBJECTION 14* [42:14 - 43:11] and *OBJECTION 16* [44:21 - 45:17] - Dr. Wang was asked on several occasions whether another physician's records contained indications that Bockelman had any complaints related to a stroke. In addition to the problems with this line of questioning as discussed above, Defendant argues that Dr. Wang did not have the record in question at the time he treated Bockelman and did not rely on it in forming any opinions relating to his diagnosis or treatment of Bockelman. This is clearly inappropriate questioning. If Plaintiff wanted testimony about the complaints Bockelman voiced to this other doctor, he should have deposed that doctor. The records and testimony about it cannot come in this way. The objection is SUSTAINED as to the testimony at 42:14 - 43:11, and at 44:21 - 45:17.

*OBJECTION 17* [ 48:11 - 49:9] - The next area of dispute arose out of Bockelman's hospitalization on Nov. 10, 2010. Before establishing that Dr. Wang and his partner cared for Bockelman during that hospitalization, Plaintiff's counsel asked Dr. Wang for Bockelman's "history at that time." Because all of the information Plaintiff needed to get in came after Dr. Wang established that he had cared for Bockelman, the discussion between counsel and Dr. Wang's partial answer can be deleted without doing any harm to this area of the testimony. The objection to Lines 48:11 - 49:10 is SUSTAINED. and these lines are stricken.

*OBJECTION 18* [ 66:10-23]- Dr. Wang noted in his records that Bockelman's INR was lower than it should have been. On cross examination, the doctor agreed that "one of the causes" for a low INR was the patient's not taking Coumadin. Defense counsel then asked whether the doctor thought that Bockelman's low INR was caused by his not taking the Coumandin as directed. The doctor

5

responded "it could" over Plaintiff's objection that this called for speculation, continuing his answer to elaborate on that response.

Plaintiff argues that there is nothing in the doctor's records or his testimony about whether Bockelman was or was not compliant, and I agree. Given the absence of such testimony or records and noting that the doctor testified that non-compliance was only "one of the reasons" for low INR, I conclude that Dr. Wang had no basis to conclude that non-compliance was "probably" the reason for Bockelman's low INR level.

This objection is SUSTAINED, and lines 66:10-23 are stricken. In addition, the first four lines on page 67 continue this line of questioning, and they make no sense at all once the lines from page 66 are stricken. I therefore order that lines 67:1-4 are also stricken.

***OBJECTION 19*** *[ 84:23 - 85:5] and* ***OBJECTION 20*** *[ 85:13 - 85:3]*- On redirect examination, Plaintiff's counsel asked Dr. Wang a number of obviously leading questions about his opinions. Rule 611 states that leading questions should not be used on direct examination but should be permitted in cross examination, in direct examination of hostile witnesses, and in direct examination of witnesses identified with an adverse party. Plaintiff suggests that leading questions are proper to prove a negative, but that is not what counsel was doing. Instead, what counsel was doing was unnecessarily and improperly emphasizing the proper standard that an expert must apply in order to offer an opinion. The objections are SUSTAINED, and lines 84:23 - 85:5 and 85:13 - 86:3 are stricken[1].

**OTHER OBJECTIONS TO DR. BAZ'S TESTIMONY**

---

[1] The motion mis-stated the page and line numbers for Objection 20. Counsel were contacted by the Court and agreed that the correct page and line numbers for Objection 20 are 85:13 - 86:3.

Dr. Baz is a family practitioner in Wenona. He and his son practice together, and they treated Bockelman for "multiple medical problems including an artifical heart valve, back pain, and high cholesterol.

*OBJECTION 1*, *[Lines 27:18 - 28:9]* - After establishing that Bockelman had seen his cardiologist between visits to Dr. Baz, Plaintiff's counsel asked, "Did Mr. Bockelman complain [to the cardiologist][2] of any symptoms which might be related to the July 23 stroke?" Defense counsel objected that the question assumed a fact that this doctor had not testified about, namely that Bockelman had in fact had a stroke. The doctor went on to read from his chart the complaints that were noted on two office visits. The complaints from the second visit included "Recent, open parentheses stroke, to see Dr. Wang."

There are any number of problems with the question and with Dr. Baz's response to the question. It is indeed true that there had been nothing mentioned about a stroke before this question was asked; the objection should have triggered plaintiff's counsel to change the form of his question to correct this omission. See Fed.R.Civ.P. 32(d)(3)(B).

Simply striking the question and answer, however, would not be an appropriate way to resolve this objection. A careful reading of the transcript shows that Dr. Baz did not answer the question asked by Plaintiff's counsel at all; he simply began reading from his own chart at a time when no question about his own chart was pending. This error is understandable. After the initial question about the cardiologist's records was asked, the objection was made. After the objection, counsel for plaintiff had the court reporter read the question back to Dr. Baz. In isolation from the

---

[2]Actually, the question asked by Plaintiff's counsel is somewhat vague about *who* Bockelman might have voiced his complaints to. However, in Plaintiff's argument on this question, counsel makes clear that he was referring to the cardiologist's records.

7

preceding questions about the cardiologist's records, it appears that Dr. Baz thought the question related to his own records.

In order to resolve this issue, the most logical approach would be to strike 27:21-28:9 and reword the question so that Dr. Baz's response makes sense. If the question were to read something like: "Did Mr. Bockelman's complain of any symptoms the *next time you saw him,*" then his response - reading from his own chart - makes sense, and the problem with assumption of a fact not in evidence is resolved.

To the extent stated, Objection 1 is SUSTAINED. Lines 27:18 - 28:9 are stricken, and the parties are directed to revise the question so that Dr. Baz's answer makes sense.

***OBJECTION 2*** *[31:22 - 32:4]* - In this section of Dr. Baz's deposition he acknowledges that Bockelman was referred to him by a neurologist. Plaintiff's counsel asked him, And, Doctor, you agree with [neurologist's] opinions about the fact that Mr. Bockelman was not in need of surgical intervention; is that correct?" Defendant objects that this was a leading question. While I agree that this is a leading question, there is absolutely no harm from either the question or the answer. It was no more or less effective than the proper line of question would have been, and it was more efficient. The objection is DENIED.

***OBJECTION 3*** *[32:7-18 ]*- In this section of the deposition, Plaintiff asks Dr. Baz to testify about whether Bockelman made "any complaints about signs or symptoms of complications from the stroke" to another physician. Dr. Baz responded with information contained in that physician's records. In addition to the hearsay problem addressed above, Defense counsel objected that Dr. Baz had no personal knowledge of whether the complaints had been made. Plaintiff does not address this objection. Regardless, it is clearly the case that an expert opinion need not be based on personal knowledge. This objection is DENIED.

*OBJECTION 8 [62:15-21]* - After Dr. Baz has testified that Bockelman had "multiple medical problems", defense counsel asked, "he overall is not a person who is in good health the whole time you've been treating him, correct?" Plaintiff's counsel objected that "in good health" is vague. If the question were asked in isolation, I would agree, but it was not. In context, the question is not improper. The objection is DENIED.

**OBJECTION 9:** [73:15- 74:15] - On re-direct, Plaintiff's counsel asked Dr. Baz, "what are the risks of taking a patient like Mr. Bockelman off of Coumadin?" Defense counsel objected that this question was beyond the scope of cross examination. Plaintiff responds that defense counsel had asked Dr. Baz about the risks of stroke for someone like Bockelman, as well as the risks of taking someone like Bockelman off of Coumadin. The pages cited by plaintiff's counsel are 69-70. A review of those pages reveals a series of questions focused directly on the risks of stroke. The only mention of Coumadin came in the last question in that series, a sort of summary question, as follows: "Those are the things - the kind of things that make it impossible to know whether the TIA or stroke ... had anything to do with this accident because he very well could have had it even if he had never been involved in this accident and never been off his Coumadin at all, right?" That question did not open the door for a generalized inquiry into the risks of taking someone off of Coumadin. The only focus was on the risk of stroke. The objection is SUSTAINED. Lines 73:15 - 74:15 are stricken.

### OBJECTIONS TO DR. LASHER'S TESTIMONY

Dr. Lasher is a neurologist who treated Bockelman for neck and back pain; he was definitive that he did not treat or evaluate Bockelman for issues related to a stroke.

*OBJECTION 1 [15:9-15]* - At this point in the deposition, Dr. Lasher is asked: "Doctor, do you believe that the April 20, 2008 collision had any effect on his lower back pain?" Defense counsel objected that this question had been asked and answered on two prior occasions.

9

The entire series of questions and answers are quoted in the motion. To summarize, the first two questions asked about the "cause" of Bockelman's lower back pain. The third question asked if the second collision, which is at issue in this case "had any effect on his lower back pain." At this point, counsel objected. The third question is not the same as the first two. It focuses on aggravation, not cause. The objection is DENIED.

*OBJECTION 2* *[17:12-20]* - Here Dr. Lasher is asked to look at two CT scans and opine on what could have caused the changes between the two. Dr. Lasher was emphatic that he did not treat Bockelman for issues related to TIA or stroke, and he did not utilize the CT scans in his treatment of Bockelman for neck and back pain.

Treating physicians may testify about their opinions that arise during their diagnosis and treatment of a patient. To that extent, Rule 26 treats them differently than retained experts. to the extent, however, that their opinions go beyond the scope of their treatment of a patient, they are no longer considered "treaters" and must comply with the disclosure requirements of Rule 26. Dr. Lasher's opinions on strokes did not arise during his treatment of Bockelman, and Dr. Lasher was not disclosed as an expert on strokes. His opinions as to the CT scans and all issues related to strokes are therefore improper. This objection is SUSTAINED.

*OBJECTION 3* *[ 18:19]* - Dr. Lasher testified that he did not evaluate Bockelman's "cognitive functioning" during a particular appointment. Counsel then asked him what his assessment was "with respect to his cognitive functioning." Defense counsel objected that this was leading, asked and answered, and assuming facts not in evidence. Dr. Lasher then responded with information about Bockelman's cognitive functioning.

Plaintiff points out that Lasher's records indicated that a cognitive function analysis had been done and complains that Defendant is trying to take advantage of Dr. Lasher's imperfect memory.

Plaintiff should have addressed this glaring inconsistency at the time it was raised, rather than simply proceeding as though no problem existed.

That said, it does appear that the doctor referred to his notes and was able to ask the initial question. In order to eliminate the inconsistency, lines 13-20 are stricken. In all other respects, the objection is DENIED.

***OBJECTION 4*** *[23:23 - 24:11] and* ***OBJECTION 5*** *[24:9-14]* - Here Dr. Lasher is asked to comment on whether treatment rendered by another physician - a neurosurgeon - was "necessary for the diagnosis and treatment" of injuries received in the collision. This question and the follow-up questions were based on a single treatment note in Dr. Lasher's filed from this other physician. The basis for Dr. Lasher's knowledge about what treatment Bockelman had received from this other physician appears nowhere in this section of the deposition. Plaintiff relies on Dr. Lasher's response - that Bockelman had a surgical problem in his neck and that is was appropriate for him to see a neurosurgeon - to conclude that Dr. Lasher had the requisite knowledge to answer. That is incorrect. Saying that it was appropriate for Bockelman to see a neurosurgeon is not at all the same as saying that the neurosurgeon's treatment was "necessary." The objection for lack of personal knowledge is SUSTAINED.

***OBJECTION 6*** *[40:19-41:1];* ***OBJECTION 7*** *[ 41:2-10];* ***OBJECTION 8*** *[ 41:15-19] and* ***OBJECTION 9*** *[ 44:6-11]* - While there is no doubt that the questions asked in these sections are leading, there is no harm. Had they been properly worded, the same answers would have been elicited. The objections are DENIED.

**OBJECTION TO DR. SNYDER'S TESTIMONY**

***OBJECTION*** *[41:21 - 42:12]* Only one objection is raised as to Dr. Snyder's testimony. Dr. Snyder is a psychiatrist who treated Bockelman for neck and lower back pain following the collision at issue in this case. Following her evaluation, she recommended *inter alia* physical therapy. Because this did not completely eliminate his pain, other modes of treatment ensued.

This objection arose in response to the following question by Plaintiff's counsel, "Now, doctor, the bone SPECT and the pool therapy that you mentioned on the last paragraph of the second page of your note on October 29th, do you believe those were necessary as a result of the collision." Defendant raised objections as to foundation and lack of personal knowledge.

Dr. Snyder was not the physician who ordered either the bone SPECT or the pool therapy. She did not testify about the purpose of the bone SPECT or why it was ordered. She did not testify about - and apparently had no knowledge of - the specifics of the pool therapy; all she knew about the pool therapy was that Bockelman told her that he did pool therapy. She lacked any basis whatsoever for her opinion that they were necessary. The objection is SUSTAINED.

## CONCLUSION

As stated herein, the objections in the four transcripts are sustained in part and denied in part, and these motions are accordingly GRANTED IN PART AND DENIED IN PART.

ENTERED ON October 28, 2011

                                                    s/ John A. Gorman

                                 JOHN A. GORMAN
                     UNITED STATES MAGISTRATE JUDGE